United States District Court
Southern District of Texas

**ENTERED**

December 05, 2018

David J. Bradley, Clerk

| | | |
|---|---|---|
| OOGC America LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-17-248 |
| | § | |
| Chesapeake Exploration, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## Opinion on Arbitration Corruption

1. *Introduction.*

An arbitration was heard by a three-member panel: two were party-appointed and one chairman whom the other two selected. The panel has held three hearings and rendered three separate awards. Because one arbitrator did not disclose his decade-long extensive business relationship with an affiliate of the party appointing him, the awards must be vacated.

2. *Background.*

OOGC America LLC and Chesapeake Exploration, L.L.C., jointly own oil and gas working interests in the Eagle Ford Shale of south Texas, and the Niobrara Shale in northeastern Colorado. Under the development agreements, Chesapeake is the operator and OOGC is the non-operator.

The parties dispute Chesapeake's contractual obligations to OOGC as they apply to Chesapeake's affiliates and other companies that worked on the joint account. OOGC and Chesapeake disagree about (a) whether some companies should be considered affiliates, related parties, or third parties of Chesapeake under the terms of the agreements, and (b) if they are affiliates or related parties, whether they charged excessive rates to the joint account in violation of those agreements.

3.     *Arbitration.*

In February 2016, OOGC filed an arbitration demand. The three-member arbitration panel consisted of J. Robert Beatty, chosen by OOGC, D. Patrick Long, chosen by Chesapeake, and Donald I. Schultz.

The panel divided the arbitration into four hearings by topic. Three have been held.

The first hearing addressed Chesapeake's obligation to disclose information to OOGC about its conflicts of interest. It also covered Chesapeake's relationship with FTS International, Inc., and other companies.

The second hearing discussed the charges of Chesapeake's affiliate, Nomac Drilling, LLC.

The third hearing covered the completion charges of Chesapeake's affiliates, Performance Technologies, LLC, and FTS International.

After the second and third hearings concluded, the panel entered a partial final award on OOGC's damages claims for drilling and completion.

A fourth hearing scheduled for March 2017 would have addressed Chesapeake's breach of the competitive rate clause for its remaining affiliates, but in early January, OOGC objected to Long's participation. OOGC says Long and the FTS board chairman, Yong Siang Goh, have had a business and personal relationship for over ten years. Long never disclosed this connection to FTS. It insists that Long heavily persuaded the other panel members and has permanently tainted their judgment.

This court stayed the fourth hearing. OOGC moved to vacate the awards.


A.     *FTS.*

From 2012-2014, FTS was a primary affiliate of Chesapeake. In July 2016, Chesapeake moved for partial summary judgment seeking a preliminary ruling from the panel. It argued that FTS should not be classified as an affiliate under the development agreements – a company is considered an affiliate by its power to control because of the "Asian Consortium" – led by Temasek Holdings – that controls FTS.

In response, OOGC says Chesapeake materially influenced the FTS board of directors. It produced a photograph of the board of directors identifying board chairman,

Goh, Domenic J. Dell'Osso, Jr., and Chesapeake vice president, Bryan Lemmerman. Goh is also a senior director for Temasek.

B.    *Affiliates Hearing.*

At the request of Chesapeake, the panel expanded the affiliates hearing to discuss the affiliate status of FTS. It determined that Chesapeake breached the development agreement but denied OOGC's equitable relief. In short, the agreements define affiliate as any person that directly or indirectly controls, is controlled by, or is under common control with the first person or entity. There is also a common sense definition of affiliate – one person or entity has a material interest in another. The panel concluded that the Asian Consortium and Temasek Holdings controlled FTS; it was not and is not an affiliate of Chesapeake under the agreements nor common sense.

4.    *Evident Partiality.*

Evident partiality is when an arbitrator does not disclose facts that create a reasonable impression of bias.[1] Long was required to disclose his relationships or circumstances that would lead a reasonable, disinterested person to question his impartiality. When he claimed that he did not have professional or social connections with the parties or witnesses, he lied.

Long's evident partiality, however, was discovered when OOGC came across data establishing that he knowingly did not share that he had numerous interests with FTS and Chesapeake – specifically, the long, complex, and substantial business relationship he has had with Goh, the board chairman of one of Chesapeake's primary challenged affiliates.[2]

An arbitrator must also continue to check for conflicts and disclose them throughout his service. Long had several opportunities to be candid. Instead, he

---

[1] 9 U.S.C.A Sec. 10(a)(2); *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 147 (1968).

[2] American Arbitration Association, Rule-17(a) Disclosure.

continuously withheld that information. During the third hearing, Long asserted that he only represented one oil and gas company. He did not mention FTS or Goh.

5. *Relationship.*

Long and Goh were officers, co-managers, investors, and partners in at least six businesses over the last ten years:

| Business | Long's Position | Goh's Position |
|---|---|---|
| Beta Capital Group, LLC | Owner and Manager | Owner |
| Beta GPS Trading, LLC | Manager | Manager |
| Aegis Services Company, LLC | Vice President | CEO |
| North American Technologies Group, Inc. | Owner and CEO | Owner |
| Beta Business Development, LLP | Director | Vice President |
| Sponsor Investments, LLC | Partner | Partner |

In addition to these business connections, Long did not disclose that in 2015, he had represented FTS as a lawyer. Jolene Goh, the daughter of Yong Siang Goh, also worked as an attorney at Long's firm. She now works with her father for Temasek Holdings, a client of the firm. He had a working relationship with FTS's deputy general counsel, Jennifer Keefe – a former partner at his firm.

OOGC also discovered that Long may have an undisclosed relationship with Chesapeake through his ownership in Beta Shale, LLC. The company holds mineral interests in the same pooling unit as Chesapeake in Oklahoma. Further, Beta Shale has the same address as Sponsor Investments, LLC – a company with Goh as a partner.

In its investigation to disqualify Long, the American Arbitration Association asked him twice to make specific disclosures about his business and personal relationships. He gave vague, incomplete, evasive answers, and he narrowly formed his

responses to avoid fully sharing his extensive businesses. Long was not candid; he failed to disclose the truth.

Long intentionally and continually hid his business connections. Because of his perfidy, he was put in a position to decide whether (a) his former client should be considered an affiliate, and (b) if Chesapeake had breached its contractual obligations to OOGC.

6.      *Conclusion.*

Long knew he had to disclose his business connections. Instead, for eleven months, he lied and hid his complex history of investments and relationships with companies and people associated with Chesapeake from OOGC and the AAA.

Even when his deceit became known to OOGC and the American Arbitration Association, he deliberately evaded their inquiries. Worse, Chesapeake knew of Long's deceit and failed to disclose the information to OOGC. Chesapeake is just as culpable as Long. When the chairman of a three-person panel is corrupt with respect to the substance of the case before it, he cannot reasonably be thought not to have influenced the others. Because Long influenced his other panel members and probably affected the outcome of the arbitration, the awards will be vacated.

Signed on December __5__, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge